FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 JUN 29 PM 2: 48

U. S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUN 2 9 2004

| | |
|---|---|
| SUSAN CLARK, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV02-CO-03056-S |
| STATE OF ALABAMA, | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

I.    INTRODUCTION.

The plaintiff, Susan Clark ("Clark"), filed suit against the defendants,
State of Alabama ("State"), Jefferson County Department of Health
("JCDH"), and Lee Eakins ("Eakins"), on December 13, 2002. [Compl.] In her
inital complaint, Clark sought relief for wrongful retaliation in violation of
Title VII of the Civil Rights Act of 1964, violation of her right to equal
protection under 42 U.S.C. § 1983, non-payment of overtime in violation of
the Fair Labor Standards Act, and assault and battery. [Compl.] On January
21, 2003, in her response to defendant's motion to dismiss, Clark conceded
that her FLSA claim against the State was due to be dismissed. [Pl.'s Resp.

Mot. Dismiss.] On January 31, 2003, Clark amended her complaint to eliminate her claims brought under § 1983 against the State of Alabama. [Doc. # 18.] As a result, the only claims that remain are Clark's Title VII retaliation claim against the State and her § 1983 and assault and battery claims against Eakins.

Clark claims that she suffered retaliation from the State after testifying on behalf of a co-worker in his Title VII lawsuit and eventually joining the lawsuit herself.  Clark also asserts claims against Lee Eakins for assault and battery and for violation of her right to equal protection under 42 U.S.C. § 1983, when Eakins allegedly retaliated against her by grabbing her arm and injuring her during an altercation at the JCDH.

Presently before the court are motions for summary judgment, filed separately on April 12, 2004, by the State of Alabama [Doc. # 61] and Lee Eakins [Doc. # 68].  The issues raised in the motions have been briefed by the parties, and are now ripe for decision.  Upon due consideration, the court is of the opinion that the State of Alabama's motion for summary judgment is due to be granted in all respects.  Lee Eakins' motion for summary judgment is due to be granted as to Clark's § 1983 claim, insofar

as she seeks monetary damages.  To the extent Clark requests injunctive relief against Eakins, the matter is moot.  The court exercises its discretion to dismiss, without prejudice, Clark's state law claim against Eakins for assault and battery.

II.    FACTS.[1]

Plaintiff Clark began working for the State of Alabama Department of Public Health ("ADPH") as a Disease Intervention Specialist at the Dallas County Health Department in 1994. [Joint Status Report ¶ 1; Doc. # 60.]  In 1994, Plaintiff acknowledged receipt of the ADPH policy prohibiting sexual harassment in the workplace which states in pertinent part:

> It is and shall continue to be the policy of this Department that its employees and their work environment shall be free from all forms of sexual harassment and intimidation.  Verbal and physical conduct of a sexual nature including sexual advances, requests for sexual favors, or other conduct which tends to create an intimidating, hostile, or offensive work environment by any employee, supervisor, or manager is strictly prohibited.

---

[1]The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[Def.'s Ex. 6 & 21.]

Clark also acknowledged receipt of the Alabama Department of Public Health Employee Handbook which states in pertinent part regarding leave: "You must, of course, get permission from your supervisor before you take leave except in cases of emergency when the need could not be anticipated. In every case, a leave slip must be completed and signed by your supervisor." [Ex. A, Pl.'s Resp. to Mot. Summ. J.]

In 1995, a Title VII lawsuit was brought by John Till ("Till"), an ADPH employee.  Clark testified on behalf of Till.  [Clark Dep. at 240-41.] Clark subsequently joined in Till's lawsuit against the ADPH, alleging she was being retaliated against by the ADPH for testifying on behalf of Till.  [Clark Dep. at 106-07.] In 1996, the lawsuit was settled and pursuant to the settlement agreement, Clark was transferred to the Jefferson County Department of Health ("JCDH"). [Joint Status Report ¶ 3; Doc. # 60.] Although Clark remained an employee of the ADPH, she was supervised by employees of the JCDH. [Joint Status Report ¶ 4; Doc. # 60.]

From 1999 to 2001, Clark's immediate supervisor was Lee Eakins. [Joint Status Report ¶ 7.] From 2001, until 2002, Bridge Norman ("Norman")

was Clark's immediate supervisor. [Joint Status Rep. ¶ 8; Doc. # 60.]  From 1996 to 2002, Terrie Outlin was an STD Program Manager at the JCDH and supervisor to Clark's immediate supervisors. [Joint Status Rep. ¶ 9; Doc. # 60.]

Shortly after Eakins became Clark's supervisor, Eakins received a call from John Till that was meant for Clark. [Clark Dep. at 203.] When Eakins gave Clark the message, he inquired whether Till was the person she testified for and Clark told him that he was. [Clark Dep. at 203.]  Terrie Outlin testified in her deposition that Clark made statements that she was working at the JCDH pursuant to a court order but Outlin was told by others that the statements were not true. [Outlin Dep. at 31.] According to Anthoneria McElroy, a former JCDH employee, it was common knowledge at the JCDH that Clark testified on behalf of John Till and against the Alabama Department of Public Health. [McElroy Aff., Pl.'s Resp. Mot. Summ. J.]

John Michael O'Cain ("O'Cain") was employed by the Centers for Disease Control and assigned as the Director of Alabama's Sexually Transmitted Disease Control Program. [O'Cain Dep. at 60.] O'Cain stated that Clark supported Till's lawsuit in order to "stir up more trouble and

divert attention from her own problems." [O'Cain Dep. at 46.] O'Cain further testified that he believed Clark was a "problem employee." [O'Cain Dep. at 47.] He stated that even after Clark's transfer, he made negative comments about her behavior and work performance to her new supervisors. [O'Cain Dep. at 145-46.] O'Cain states that he was informed of problems with STD staff members and he answered specific questions posed to him by Clark's supervisors. [O'Cain Dep. at 101, 142-43.]

On June 9, 1999, Eakins issued Clark a written warning for insubordination, stating that she had attended an organizational meeting after having been instructed not to. [Def.'s Ex. 18, p. 19.] Clark stated that she attended the meeting on her lunch break. [Clark Aff., Pl.'s Resp. to Def. Mot. Summ. J.] On July 30, 1999, Eakins made a written request to Clark that she submit a leave request for attending a conference after she was instructed not to attend. [Def.'s Ex. 18, p. 18.]

On December 28, 2000, Eakins distributed a new work policy to all employees regarding unauthorized absences from the work site. [Def.'s Ex. 17, p. 17.] The document stated that no employee was to leave without express permission from Eakins. [Id.]

On November 15, and 28, 2000, Outlin issued Clark a written warning for unapproved leave. [Def.'s Ex. 18, pp. 12-16.] Clark submitted a leave slip so that she could attend the Governor's Commission on AIDS but did not have approval of the leave before she left. [Id.]   Clark states in her response brief that she did not need prior authority because the Governor of Alabama had appointed her to the Commission. [Pl.'s Resp. Mot. Summ. J., ¶ 39.]

On March 19, 2001, Eakins gave Clark a verbal warning regarding her failure to enter her cases into MIS 3.2 by March 16, 2001, as requested on March 12, 2001. [Def.'s Ex. 18, p. 7] On April 25, 2001, Eakins issued Clark a written warning for appearing on television without prior approval or clearance from the Public Relations Department and for being AWOL during that time. [Def.'s  Ex. 18, p. 8.]

On August 24, 2001, Clark's new supervisor, Bridget Norman, gave Clark a verbal warning for being AWOL. [Def.'s Ex. 18, p. 9.] Clark states that she was running late, called Norman, and received permission to report late. [Clark Aff. at ¶ 8, Pl.'s Resp. to Mot. Summ. J.] On September 21, 2001, Norman gave Clark a verbal warning regarding excessive leave. [Def.'s

Ex. 18, p. 10.] Clark contends that she was unable to return home from a vacation to Mexico due to the events of 9/11. [Clark Dep. at 328.] Outlin testified that if Clark was stranded in Mexico due to those events, she should not have been written up. [Outlin Dep. at 132.]  On December 6, 2001, Norman gave Clark a verbal warning for not submitting her cases in a timely manner.  [Def.'s Ex. 18, p. 11.] Clark states that she was issued this warning after complaining to Norman about her workload. [Clark Dep. at 326.]

On February 1, 2002, Norman submitted a memo to Clark memorializing their discussion regarding time management which was in response to the "number of delinquent paper in [Clark's] pouch." [Def.'s Ex. 18, p. 6.] On February 22, 2002, Norman gave Clark a verbal warning regarding an e-mail she forwarded to JCDH employees, including Lee Eakins, of a man with his penis caught in a shower door, which Norman stated violated the State's sexual harassment policies. [Def.'s Ex. 18, p. 3.] Clark admits that she did forward the explicit e-mail but maintains that she sent it by mistake. [Clark Dep. at 71.]  The February 22, 2002, warning also made reference to Clark's excessive use of leave. [Def.'s Ex. 18, p. 3.]

On February 25, 2002, Clark asked Eakins why he forwarded the explicit e-mail to Dr. Fleenor.[2] [Eakins Dep. at 54; Ex. 8.] Clark alleges that Eakins became irate and grabbed her arm in such a way that it left bruises. [Clark Aff. at ¶ 12.] On February 26, 2002, Clark stated in an e-mail to Dr. Edward Hook that since 1998, she had endured maltreatment and stress because of her supervisors. [Def.'s Ex. 2.]

On March 8, 2002, Clark requested and received emergency leave for March 13, 2002. [Def.'s Ex. 14.] It came to Norman and Outlin's attention that Clark was seen on March 13, 2002, in Montgomery, Alabama, at the Governor of Alabama's HIV Commission for Children, Youth, and Adults 2002 Annual Reporting Meeting. [Id.] Clark states that she merely asked for emergency leave and her supervisors wrongly assumed it was for medical purposes when they granted it. [Clark Aff. ¶ 15.] Norman contends that this was the same meeting for which Clark received a warning for attending and representing the JCDH without approval in November 2000. [Id.] After the March 13, 2002, annual meeting, Clark was quoted in the Montgomery

---

[2]It appears that Eakins forwarded the e-mail to Outlin who, in turn, submitted it to Drs. Ouimet and Dr. Fleenor. [Eakins Dep. at 54.]

Advertiser and identified as a Disease Intervention Specialist with the Jefferson County Department of Health [Def.'s Ex. 5] and was listed as such under the listing of board members.  [Def.'s Ex 2.]

On March 15, 2002, Norman recommended to Dr. Donald Williamson, State Health Officer, that Clark be suspended for five days due to falsification of documentation regarding the emergency leave request, insubordination, excessive use of leave, and failure to complete work assignments in a timely manner. [Def.'s Ex. 14.] On March 19, 2002, Dr. Michael Fleenor, Health Officer, wrote Dr. Williamson and stated that he no longer wanted Clark to work at the JCDH.  [Def.'s Ex. 15.]  Dr. Williamson informed Clark that she would have a due process hearing on March 27, 2002, to consider the suspension and, due to Dr. Fleenor's request that she not work at the JCDH, she would be temporarily transferred to Tuscaloosa. [Def.'s Ex. 19.]

On April 9, 2002, the Hearing Officer, Dorothy Norwood, issued her report, finding that the JCDH supported its recommendation.  Norwood wrote in pertinent part:

> The problem is that at times [Clark] has let non-assigned activities interfere with her work and that she has permitted herself to be represented in her official capacity without approval from the department.  Ms. Clark has also taken leave without prior approval and under circumstances which were misrepresented.
>
> The testimony and exhibits indicate that the department has followed its progressive discipline policy, which will support the recommended suspension.

[Def.'s Ex. 13.]  Based on Dr. Fleenor's request that Clark no longer work at the JCDH, Norwood recommended that Clark be permanently assigned to Tuscaloosa to preserve her job and that she receive a three-day suspension without pay. [Id.]

On April 11, 2002, Dr. Williamson wrote Clark stating that, after a careful review of the documentation presented at the due process hearing, Norman's request for disciplinary action against Clark, the evidence presented at the hearing, and Norwood's report and recommendation, he concurred with the recommendation that she be suspended without pay for three days and transferred to the Tuscaloosa County Department of Health. [Def.'s Ex. 20.]   Dr. Williamson asserts that his decision "had nothing to do

with Ms. Clark's involvement in a lawsuit more than five years earlier."

[Williamson Aff. ¶ 7.]

III.   STANDARD.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catreet*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving

party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   DISCUSSION.

As an initial matter, the State of Alabama contends in its motion for summary judgment that it is not a proper defendant in this action as it is separate and distinct from the JCDH.  The State's argument is without merit.  The JCDH is the administrative arm of the Jefferson County Board of Health, which is an agency of the State.  *See Davenport v. Neely*, 7 F. Supp.

1219, 1231 (M.D. Ala. 1998) (discussing Montgomery County Board of Health

and Montgomery County Health Department).

> The county boards of health are created pursuant to Ala. Code 1975, § 22-3-1, and are under the "general supervision and control of the state board of health." The county boards of health are charged by the legislature with the task of supervising the enforcement of health laws of the state within the counties. Ala. Code 1975, § 22-3-2. They execute a state function and not a county function.

*Williams v. Madison Co. Bd. of Educ.*, 523 So. 2d 453, 455 (Ala. Civ. App.

1988). Therefore, the State of Alabama is a proper defendant in this action.

A.     Clark's Title VII Retaliation Claim.

To establish a prima facie case of retaliation under Title VII, Clark

must show: "(1) she engaged in protected activity; (2) her employer was

aware of that activity; (3) she suffered adverse employment action; and (4)

there was a causal link between her protected activity and the adverse

employment action." *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir.

1999).

It is undisputed that Clark's participation and subsequent joinder in

John Till's 1995 Title VII lawsuit constitutes protected activity. Clark has

also shown that she suffered an adverse employment action. The Eleventh

Circuit has held that Title VII's protection against retaliation encompasses those actions which "fall short of ultimate employment decisions." *Graham v. State Farm Mutual Ins. Co*, 193 F.3d 1274, 1283 (11th Cir. 1999). "Thus, actions such as undeserved negative job evaluation, demotions, disadvantageous transfers, or toleration of harassment are actionable under the retaliation clause." *Id*. Clark alleges that she received "bogus" disciplinary action from her supervisors in retaliation for her participation in the 1995 Title VII lawsuit. She contends that these bogus disciplinary actions ultimately led to her three-day suspension and transfer from the JCDH to the Tuscaloosa County Department of Health. Therefore, Clark has sufficiently demonstrated that she suffered an adverse employment action.

Clark has also provided sufficient evidence that the JCDH was aware of her protected activity. Eakins received a phone call from John Till that was meant for Clark. When Eakins notified Clark of the call, he asked her whether Till was the person Clark testified for in 1995, and Clark replied that he was. Terrie Outlin testified that Clark made statements about her participation in the 1995 lawsuit but was told by others that it was untrue. Anthoneria McElroy, Clark's former co-worker, stated in her affidavit that

Clark's transfer due to her lawsuit was common knowledge around the department. Although Dr. Williamson stated in his affidavit that the 1995 lawsuit had nothing to do with his decision to suspend and transfer Clark, he did not state that he had no knowledge of the lawsuit. Construing all doubts in favor of Clark, she has sufficiently shown that the JCDH knew of her protected activity.

The final element of a  prima facie case of retaliation under Title VII is proof of a causal connection between Clark's protected activity and the adverse employment action.  Clark need only show that "the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).  Clark points to evidence that O'Cain: (1) believed she was trying to stir up problems by testifying in John Till's lawsuit; (2) stated that she was a problem employee; and (3) kept up with her transfer and provided negative information about her to her new supervisors.  Clark contends that since her testimony and subsequent transfer to the JCDH in 1996, O'Cain has encouraged her supervisors to take bogus disciplinary action against her in

retaliation for her testimony and that the disciplinary action resulted in her suspension and transfer.

Usually, close proximity between the employee's protected conduct and the adverse employment action is sufficient to "raise an inference of causation." *Bechtel Constr. Co. v. Sec. of Labor*, 50 F.3d 926, 934 (11th Cir. 1995).   In contrast, a long period of time between the two events may defeat the prima facie case.  *See Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) (15-month period between employee's grievance and the adverse employment action belied assertion that the former caused the latter); *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993) (9-month gap between protected activity and adverse employment action precluded reasonable inference of causation); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (13-month delay between protected activity and termination too long for causation to be established); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (4-month lag between protected activity and termination not sufficient to justify inference of causation).  The court is of the opinion that the substantial time lapse —

approximately six years — between Clark's protected activity and her suspension and transfer, hinders her ability to prove causal connection.

Clark argues that causation is established indirectly by O'Cain continuously encouraging her supervisors to retaliate against her by issuing bogus disciplinary warnings. Clark alleges that O'Cain has done this on a continuous basis since her participation in the 1995 lawsuit and her subsequent 1996 transfer to the JCDH. However, Clark has not sufficiently established that the alleged retaliation occurred continuously. The court's review of the record reveals disciplinary action from 1998-2002.[3]  Indeed, there is no evidence that warnings were issued to her during 1996, 1997, or 1998. Clark has repeatedly alleged that Eakins, Outlin, and Norman all took bogus disciplinary action against her but she has not established that the disciplinary action occurred on a continuous basis.

Moreover, Clark has failed to show that all of the disciplinary actions levied against her were unwarranted. Clark admits that on November 15,

---

[3] Clark only states specific instances of disciplinary action against her from 1999-2002. However, the Hearing Officer made reference in her report of a 1998 warning to Clark for insubordination for using profanity or abusive language when addressing supervisory personnel. [Def.'s Ex. 13.] The court is unable to locate such documentation.

2000, she attended the Governor's Commission on AIDS without prior leave approval.  She contends that leaving the slip on her supervisor's door should have been sufficient.  Clark also asserts in her brief that even if this course of action was not sufficient, she "did not need prior authority because the Governor of Alabama [had] appointed her to the Commission." [Pl.'s Br. at 8.]  This is in direct contradiction to the State's procedure regarding leave.

Clark has not disputed the validity of the oral warning she received on March 19, 2001, regarding her failure to enter her cases into MIS 3.2 by the required date.  Nor has she disputed that she appeared on television in April 2001, without prior approval and while AWOL.   Clark has further admitted to sending an e-mail of a nude man to other JCDH employees in violation of state and county policies even though she contends she sent it by mistake.

These intervening violations of state policies operate to sever any causal connection between Clark's protected activity and her suspension and transfer.  *See Booth v. Birmingham News Co.*, 704 F. Supp. 213, 215 (N.D. Ala. 1988) (No reasonable inference of retaliation when the record contained "intervening factors," or other reasons for the adverse

employment action after the protected activity), *aff'd without op.*, 864 F.2d 793 (11th Cir. 1988).

The substantial time lapse between Clark's 1996 protected activity and her 2002 suspension and transfer, her failure to show evidence of any disciplinary action issued against her during a two year span, her inability to dispute taking unapproved leave, and the fact that she sent an explicit nude e-mail to JCDH employees in violation of workplace policies destroy any inference of a causal connection between Clark's protected activity and her subsequent adverse employment action.  Clark has failed to show any evidence that her testifying on behalf of Till or joining his Title VII suit had anything at all to do with the adverse employment actions she experienced in 2002.  As Clark has failed to establish a prima facie case, no reasonable jury could conclude that retaliation was the reason for the State's 2002 decision to suspend and transfer her.  Therefore, the State of Alabama's motion for summary judgment is due to be granted.

B.    Clark's Claims against Lee Eakins.

Clark alleges that Eakins grabbed her arm and bruised it during an altercation at the JCDH.  As a result, Clark claims against Eakins, in his

individual capacity and pursuant to 42 U.S.C. § 1983, a denial of her right to equal protection and assault and battery.  The court will take each claim in turn.

      1.    Clark's Equal Protection Claim.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).   To determine whether the constitutional right in question is "clearly established," the court must ask "whether the state of the law [at the time of the alleged constitutional violation] gave [Eakins] fair warning that [his] alleged treatment of [Clark] was unconstitutional." *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002).  Clark contends that Eakins "physically grabbed and restrained [her] in retaliation for [her] complaints of race discrimination" and in retaliation for her testimony in the 1995 lawsuit and thus, violated her right to equal protection. [Am. Compl. ¶ 64.]

"The right to be free from retaliation is clearly established as a *first amendment* right and as a *statutory* right under Title VII; but no clearly

established right exists under the *equal protection* clause to be free from retaliation." *Ratliff v. DeKalb County, Georgia*, 62 F.3d 338, 340 (11th Cir. 1995) (emphasis in original). *See Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996) (Equal Protection Clause "does not establish a general right to be free from retaliation."); *Bernheim v. Litt*, 79 F.3d 318, 323 (2nd Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989) ("[Plaintiff's] right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause."), *cert. denied*, 494 U.S. 1029 (1990).

The court need not address whether Eakins was acting under the color of state law as Clark can show no clearly established constitutional right to be free from retaliation under the equal protection clause . Eakins' motion for summary judgment on Clark's § 1983 claim is due to be granted, insofar as Clark seeks monetary relief from Eakins.

Although Clark has failed to show a violation of a clearly established constitutional right, this factor does not bar her claim for injunctive relief against Eakins under § 1983. *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996) (To seek injunctive relief, no "clearly established" right need be alleged.) However, the court is of the opinion that Clark's request for injunctive relief against Eakins is rendered moot as she is no longer employed at the JCDH or under Eakins' supervision.[4]

### 2. Clark's Assault and Battery Claim.

Clark alleges state law claims of assault and battery against Eakins for grabbing her arm during the altercation at JCDH. As all of Clark's federal claims are due to be dismissed on summary judgment, "[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). The Eleventh Circuit has urged district courts to dismiss any remaining state claims when the federal claims have been dismissed before trial. *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,

---

[4] In Clark's amended complaint, she does not specifically state what form of injunctive relief she seeks from Eakins and this court cannot conceive of any equitable relief that it could require Eakins to perform.

Page 23 of 24

735 F.2d 414, 428 (11th Cir. 1984).   Therefore, the court declines to exercise jurisdiction over Clark's assault and battery claims against Eakins. The remaining claim will be dismissed without prejudice so that Clark may proceed with it in state court if she so desires.

V.   CONCLUSION.

The court will enter an appropriate order in conformity with this memorandum of opinion.


Done, this 29th of  June, 2004.

                                                 L. SCOTT COOGLER
                                           UNITED STATES DISTRICT JUDGE